UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| DOUGLAS A. REAVES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:15-cv-00350-JMS-MJD |
| | ) | |
| RUTHIE  JIMERSON DDS,[1] | ) | |
| *et al.* | ) | |
| Defendants. | ) | |

**Entry Granting Motion for Emergency Medical Injunction**

Plaintiff Douglas Reaves, an inmate at the Wabash Valley Correctional Facility has experienced several painful dental issues over the years. He alleges that dentist Ruthie Jimerson has exacerbated these problems instead of solving them. Specifically, he asserts that she has failed to fill teeth that need filling, broken caps from his teeth, and extracted teeth when they could have been treated without extraction. He seeks preliminary injunctive relief in the form of a referral to a different dentist. Defendant Dr. Jimerson has opposed the motion and has submitted Mr. Reaves's dental records. Mr. Reaves has replied.

**I. Background**

The facts that form the basis of Reaves's claims are highly disputed.[2] First, Reaves alleges that, on February 25, 2011, Dr. Jimerson cleaned his teeth and broke off a Dura-cap shield but failed to repair it. Filing No. 2 at 4. Dr. Jimerson responds that Reaves never had a cap on his teeth

---

[1] The filings indicate that the correct spelling of this defendant's last name is "Jimerson." Accordingly, the **clerk shall** amend the docket to reflect this spelling.

[2] Reaves alleges that Dr. Jimerson is not properly licensed to perform dental work. But Dr. Jimerson has submitted sufficient evidence that while her license was temporarily placed on probation in May of 2013, requiring her to have a monitor if she performed bridges and crowns, that probation did not affect her work at the prison because bridges and crowns are not performed there. Further, she is no longer on probation and may practice without restriction. Accordingly, the Court will not address Reaves's arguments based on Dr. Jimerson's license.

and she did not break one. Filing No. 30 at 4. But Reaves points out that his dental records reflect a cap being placed on his tooth in October of 2007. Filing No. 36 at 2; Filing No. 30-2 at 2. Reaves goes on to assert that on April 25, 2011, he went back to dental and Dr. Jimerson x-rayed the tooth and unnecessarily extracted it. Filing No. 2 at 4-5. He also states that she did not properly anesthetize him prior to the extraction, causing pain and suffering. Filing No. 2 at 5. Dr. Jimerson contends that Reaves consented to the extraction and did not complain of pain. Filing No. 30 at 4.

The parties agree that on May 1, 2012, Dr. Holland examined Reaves and found that two teeth required resin restoration. Filing No. 2 at 5. On May 31, 2012, Dr. Jimerson called Reaves in to do the procedure, but he refused treatment because of her prior mistreatment and because Dr. Holland had previously said he would do the procedure. Filing No. 2 at 5.

The parties also agree that on March 1, 2013, Dr. Jimerson called Reaves to dental for treatment but he refused because expected that Dr. Leonard was to perform the procedure. Filing No. 2 at 6. On March 25, 2013, Reaves submitted a request for health care stating that he has "been having problems with Ms. Jimerson, and have filed a complaint with the DOC." Filing No. 30-2 at 9. Reaves also stated in the request that his lower teeth were cutting his lip and requested to be seen by a dentist other than Dr. Jimerson. Filing No. 30-2 at 9. On March 28, 2013, Dr. Leonard examined Reaves and determined that he had wear on teeth #21 and #22. Filing No. 30-1 at 5. Reaves stated that the teeth hurt his lips, but Dr. Leonard observed no irritation on Reaves's lips. Filing No. 30-1 at 5. Dr. Leonard told Reaves to submit a request and dental would cover the teeth with bonding resin. Filing No. 30-1 at 5. Reaves submitted a follow-up request on April 1, 2013. Filing No. 30-2 at 10. Reaves was put on the schedule to see Dr. Jimerson, but he refused this appointment. Filing No. 30-1 at 5. Dr. Leonard was only a part-time dentist and Reaves could not be scheduled with him. Filing No. 30-1 at 5. According to Dr. Jimerson, the dentists are required

2

to schedule the patients within a certain time-frame after they submit a Health Care Request ("HCR") and the only way Reaves could be seen within that time with through an appointment with Dr. Jimerson. Filing No. 30-1 at 5.

On April 26, 2013, Dr. Jimerson called Reaves in for treatment anyway, but Reaves again refused. Filing No. 2 at 6. On May 14, 2013, dental received an HCR from Reaves in which he requested to be seen for fillings. Filing No. 30-1 at 5. On May 22, 2013, Dr. Leonard repaired three of Reaves's teeth without incident. Filing No. 2 at 6.

On February 24, 2014, dental received an HCR from Reaves in which he complained that a filling had come out. Filing No. 2 at 6. On March 21, 2014, Reaves had an x-ray taken of tooth #14. Filing No. 2 at 6. Dr. Jimerson then performed the filling on #14 without incident. Filing No. 30-1 at 6. Reaves has made no requests stating problems with this tooth since that time.

On January 28, 2015, Reaves submitted an HCR stating that he needed to see the dentist because he damaged a tooth on the lower right side of his mouth while eating. Filing No. 30-1 at 6. On February 23, 2015, Dr. Jimerson saw Reaves in dental and examined his teeth. Filing No. 30-1 at 6. She noted that he had a distal fracture on tooth #31 and ordered Reaves to return to the clinic for an x-ray and a filling of the tooth. Filing No. 30-1 at 6. On March 6, 2015, Dr. Jimerson took x-rays of the area, which showed two side-by-side teeth, where one of the teeth had a cavity that was causing Reaves's pain. Filing No. 2 at 7. According to Reaves, Dr. Jimerson chose to work on tooth #31, the tooth that did not have the cavity, because the cavity on the troubled tooth "was in a hard spot to fill." Filing No. 2 at 7. Dr. Jimerson asserts that she filled the correct tooth despite the difficulty involved. Filing No. 30-1 at 6. Dr. Jimerson further asserts that there was no apparent pulpal involvement, meaning that the fracture was not deep. Filing No. 30-1 at 6. She used Copalite to prevent sensitivity and used an amalgam to fill the tooth. Filing No. 30-1 at 6.

3

On March 12, 2015, Reaves submitted a health care request for the same pain. Filing 30-1 at 6. Reaves alleges that Dr. Jimerson only gave Reaves the option of pulling the tooth instead of attempting to save it by filling the cavity. Filing 2 at 7. Dr. Jimerson states that she advised Reaves that if the pain persists, he may want to consider pulling the tooth because the filling was close to the nerve. Filing 30-1 at 6. Reaves decided to wait. Filing 30-1 at 6. Reaves also states that on April 23, 2015, Dr. Jimerson made an entry on Reaves's Patient Summary for work she never did. Filing No. 2 at 7.  Dr. Jimerson asserts that on April 23, 2015, she performed a filling on tooth #4 without incident and that Reaves has made no dental complaints and has submitted no HCRs since that time. Filing No. 30-1 at 7.

Reaves asserts that he has submitted no further HCRs regarding his dental needs because he does not want to be treated by Dr. Jimerson. He expresses his concern that he will suffer pain during any dental procedure performed by her or that she will choose simply to extract troubled teeth without attempting to save them. Filing No. 36 at 7. Reaves bases these concerns not only on his own allegations regarding his experiences with Dr. Jimerson, but also through affidavits submitted by fellow inmates who assert they have experienced significant pain when treated by Dr. Jimerson. For example, inmate James Gilman alleges that Dr. Jimerson performed a tooth repair on him without properly numbing the area. Filing No. 25-1. He asserts that when he expressed his pain, Dr. Jimerson told him "go ahead and cry." Inmate Rolland Bay asserts that during a cleaning performed by Dr. Jimerson, he experienced "extreme bleeding" and two damaged caps. Filing No. 25-1. Dr. Jimerson does not respond to these allegations. In reply in support of his motion for a preliminary injunction, Reaves provides further affidavits from fellow inmates alleging pain and other complications they experienced from dental treatment by Dr. Jimerson. Filing No. 36-9; Filing No. 36-13.

4

## II. Discussion

Reaves seeks an injunction in the form of an order that he be seen by a qualified dentist other than Dr. Jimerson to "properly save his teeth and eliminate the pain caused by those teeth." Filing No. 25 at 3. To succeed in obtaining preliminary injunctive relief, Reaves must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm if preliminary relief is not granted, that the balance of equities tips in his favor, and that it is in the public interest to issue an injunction. *United States v. NCR Corp.,* 688 F.3d 833, 837 (7th Cir. 2012). A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997). The movant bears the burden of proving his entitlement to such relief. *Cooper v. Salazar,* 196 F.3d 809, 813 (7th Cir. 1999).

### 1. *Likelihood of Success on the Merits*

The defendants argue that Reaves has not shown that he is reasonably likely to succeed on the merits of his claim. The underlying claim in this action is that Dr. Jimerson has been deliberately indifferent to Mr. Reaves's dental needs. To prevail on an Eighth Amendment deliberate indifference medical claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed, but disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 8374 (1994); *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014); *Arnett v. Webster,* 658 F.3d 742, 750-51 (7th Cir. 2011).

The defendants do not argue that the first prong of the deliberate indifference analysis – an objectively serious medical condition – is unsatisfied here. Nor could they. "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for

5

treatment would be obvious to a layperson." *Pyles v. Fahim,* 771 F.3d 403, 409 (7th Cir. 2014). Further, the Seventh Circuit has emphasized that "dental care is one of the most important medical needs of inmates." *Board v. Farnham*, 394 F.3d 469, 480 (7th Cir. 2005) (quoting *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001)). Reaves's dental pain and concern that he will continue to lose teeth is undoubtedly an objectively serious medical condition.

The defendants do argue that Reaves cannot satisfy the second element of deliberate indifference – that Dr. Jimerson knew about this serious condition, but disregarded it. "[C]onduct is 'deliberately indifferent' when the official has acted in an intentional or criminally reckless manner, *i.e.*, "the defendant must have known that the plaintiff 'was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so.'" *Board v. Freeman*, 394 F.3d 469, 478 (7th Cir. 2005) (*quoting Armstrong v. Squadrito*, 152 F.3d 564, 577 (7th Cir. 1998)). "To infer deliberate indifference on the basis of a physician's treatment decision, the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). *See Plummer v. Wexford Health Sources, Inc.*, 609 Fed. Appx. 861, 2015 WL 4461297, *2 (7th Cir. 2015) (holding that defendant doctors were not deliberately indifferent because there was "no evidence suggesting that the defendants failed to exercise medical judgment or responded inappropriately to [the plaintiff's] ailments"). In addition, the Seventh Circuit has explained that "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have [recommended the same] under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). "Disagreement between a prisoner and his doctor, or even between two medical professionals,

about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Id.*

The defendants first argue that any claim based on acts that took place prior to November 4, 2013, is barred by the applicable statute of limitations. Reaves does not dispute this conclusion, but argues that the allegations involving care he received from Dr. Jimerson prior to that date provide context for his viable claims and demonstrate that Dr. Jimerson has previously caused him unnecessary pain. Thus, Reaves asserts that these allegations support his need for injunctive relief.

The defendants go on to argue that Dr. Jimerson has not been deliberately indifferent to Reaves's dental needs. They dispute that Reaves's conclusion that in March of 2015, she did not fill the wrong tooth as Reaves asserts, but filled the right tooth despite the fact that the fracture was in a difficult spot to fill. Dr. Jimerson also asserts that there was no apparent pulpal involvement because the fracture was not deep, but a few days later, she suggested to Reaves that the tooth be pulled because the filling is close to the nerve. These two statements appear to contradict each other. It is unclear how a fracture could be shallow, but the filling used to treat the fracture be close to the nerve. Reaves suggests that this indicates that Dr. Jimerson drilled too deep, thus causing undue damage to the tooth.

The defendants go on to argue that offering to pull the tooth is a "classic example" of a matter of medical judgment that is beyond the Eighth Amendment's purview. Reaves points out, however, that once a tooth is pulled, it can never be repaired and that healthy teeth are essential to his day to day activities, particularly eating.

The Court concludes that Reaves has demonstrated a reasonable likelihood of success on the merits of his claims. He has provided evidence that Dr. Jimerson has previously ignored his

and other inmates' complaints of pain and that Dr. Jimerson suggests tooth extraction without discussing other options for treatment. It is true that inmates may not demand specific treatment or the best care possible, but it is also true that they are "entitled to reasonable measures to meet a substantial risk of serious harm." *Arnett,* 658 F.3d at 754. To meet the deliberate indifference standard, "a prisoner is not required to show that he was literally ignored." *Conley v. Birch,* 796 F.3d 742, 748 (7th Cir. 2015) (internal quotation omitted). Even if "some minimal treatment" is provided, a plaintiff may still show deliberate indifference. *Id.* "[A] doctor's choice of the easier and less efficacious treatment for an objectively serious medical condition can still amount to deliberate indifference for purposes of the Eighth Amendment." *Berry v. Peterman,* 60-4 F.3d 435, 441 (7th Cir. 2010). (internal quotation omitted).

Here, it is undisputed that Dr. Jimerson has stated that Reaves's only option other than living with the pain in his filled tooth is the extraction of that tooth. There is also evidence that could support a conclusion that Dr. Jimerson improperly filled the tooth and Reaves and other inmates have suffered pain from procedures performed by Dr. Jimerson. This is sufficient evidence to find that Reaves has a reasonable likelihood of success on the merits of his deliberate indifference claims against Dr. Jimerson.

### 2. *Irreparable Harm*

The defendants also argue that Reaves has not shown that he will suffer irreparable harm. The defendants point out that he has not submitted any HCRs or complained of dental pain since March or April of 2015. Reaves responds that, while he is in pain and requires dental treatment, he does not wanted to be treated by Dr. Jimerson and that is the reason he has not submitted any HCRs. Reaves has shown that he is in pain and has difficulty eating. He has also shown that when tasked with filling a fracture that she described as not very deep, Dr. Jimerson created a filling

deep enough that she now says is "close to the nerve." Dr. Jimerson's only recommended course of action is to extract the damaged tooth. The Court finds that Reaves's ongoing pain and possible tooth extraction are sufficient to show irreparable harm.

3. <em>Balance of the Harms and Public Interest</em>

The defendants argue that the balance of the harms and the public interest weigh in favor of denying the request for injunctive relief. The defendants point out that courts should "afford appropriate deference and flexibility to state officials trying to manage [prisons.]" *Sandin v. Conner*, 515 U.S. 472, 482 (1995). But the State and its contracted entities "have an affirmative duty to provide medical care to their inmates." *Glisson v. Indiana Dept. of Correction,* 813 F.3d 662, 666 (7th Cir. 2016) (internal quotation omitted). Here, Reaves is requesting to see a different dentist for evaluation and possible treatment. In particular, he seeks treatment for a tooth which continues to cause him pain after Dr. Jimerson filled it. The only option Dr. Jimerson has offered Reaves is extraction. It cannot be doubted that the continuing pain that Reaves claims he is experiencing and the possible tooth extraction he is facing are significant. These harms are sufficient enough to outweigh the minimal intrusion required by an order that Reaves be evaluated by a different dentist. Further, the Court finds that such an order would not offend the public interest.

**III. Conclusion**

For the foregoing reasons, Reaves has demonstrated his entitlement to injunctive relief. Accordingly, Reaves's motion for an emergency injunction [dkt 25] is **granted to the extent that Dr. Jimerson, or her designee with the authority to do so, shall refer Reaves to an outside dentist** to examine and evaluate Reaves's teeth. The Court leaves whatever treatment, if any, is

appropriate, to the determination of the outside dentist. The outside dentist shall be given a copy of this Entry.

Dr. Jimerson or her designee shall **report not later than May 5, 2016,** that the referral has been made and an appointment has been scheduled as promptly as reasonably possible, taking into account the outside dentist's schedule.

**IT IS SO ORDERED.**

Date: <u>April 15, 2016</u>

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

Douglas A. Reaves
881987
Wabash Valley Correctional Facility
Electronic Service Participant – Court Only

All electronically registered counsel

10